Filed 10/27/25  Doe v. Department of Corrections and Rehabilitation CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| JANE DOE et al., | C098273 |
| Plaintiffs and Appellants, | (Super. Ct. Nos. 34-2020-00284979-CU-MT-GDS, 34-2021-00297820-CU-MT-GDS, 34-2022-00316339-CU-MT-GDS) |
| v. | |
| DEPARTMENT OF CORRECTIONS AND REHABILITATION et al., | |
| Defendants and Respondents. | |

Plaintiffs were employees of the Department of Corrections and Rehabilitation (Department) in the Northern California-Sacramento area who filed a complaint against defendants the Department, Human Performance Institute (Human Performance), Memorial Occupational Medicine (Memorial Occupational), River City Medical Group (River City), Sacramento Family Medical Clinics, Inc. (Sacramento Family), Godwin I.

1

Okungbowa, and Gilbert Simon,[1] alleging 12 causes of action related to pre-employment medical examinations. The trial court sustained defendants' demurrers on the basis the claims were time-barred. Plaintiffs appeal, alleging the delayed discovery rule and fraudulent discovery principle apply. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

After amendments to initial complaints filed separately against defendants in 2020, 2021, and 2022, plaintiffs filed one consolidated complaint on August 17, 2022, against all defendants that alleged plaintiffs "were employees of the [Department]" and "were harmed by being forced to undergo medically unnecessary rectal and vaginal examinations as a condition of their obtaining employment with [the Department] on one or more occasions from approximately 2006 to 2016. Plaintiffs, who were anally and vaginally penetrated, were subjected to sexual harassment and inappropriate touching during those examinations." The complaint alleged defendants Simon, a doctor, and Okungbowa, a physician assistant, performed the examinations on behalf of the Department at Sacramento Family, and defendants Human Performance, River City, and Memorial Occupational "scheduled and confirmed the performance of the rectal, visual vaginal, and vaginal examinations on [p]laintiffs."

I

*Operative Complaint Causes Of Action*

Plaintiffs' operative consolidated complaint alleged 12 causes of action.

The first cause of action was for negligence against the Department, Human Performance, River City, and Memorial Occupational, alleging they "breached their duties of care to [p]laintiffs by scheduling and requiring medically unnecessary and unreasonable rectal and vaginal examinations to occur," and by permitting Simon and

---

[1] Plaintiffs also filed their complaints against other defendants who are not parties to this appeal.

2

Okungbowa to treat them. For this cause of action, plaintiffs alleged the Department "specifically breached its duty by failing to ensure that their subcontractors followed their policies and procedures for performing medically necessary pre-employment examinations for applicants for employment."

The second cause of action was for "negligent supervision and hiring and retention" (capitalization, underscoring, & boldface omitted) against the Department and Sacramento Family, alleging these defendants breached their duty to plaintiffs by failing "to properly hire, train and supervise their employees," allowing Simon and Okungbowa "access to [p]laintiffs during their pre-employment examinations that resulted in the sexual assault and abuse of [p]laintiffs including rectal and vaginal examination[s]."

The third cause of action was for gender violence against the Department, Sacramento Family, Simon, and Okungbowa, alleging Simon and Okungbowa "made unpermitted, harmful, and offensive sexual and/or other physical intrusion, invasion or contact with . . . [p]laintiffs in violation of Civil Code [section] 52.4" while Simon and Okungbowa acted as agents for the other defendants.

The fourth cause of action was for battery against the Department, Sacramento Family, Simon, and Okungbowa, alleging Simon and Okungbowa "made unpermitted, harmful, and offensive sexual and/or other contact with . . . [p]laintiffs" while acting as these defendants' agents and performing "one of [the Department's] pre-employment requirements for applicants."

The fifth cause of action was for gross negligence and/or wanton and reckless misconduct against the Department, Sacramento Family, Simon, and Okungbowa, alleging these defendants owed plaintiffs a duty "to ensure their safety and freedom from sexual assault . . . while interacting with their employees . . . and/or agents during . . . mandatory pre-employment examination[s] required by the Department." The Department and Sacramento Family also failed to adequately supervise Simon and Okungbowa even though "[the Department] knew or should have known of complaints

3

regarding their nonconsensual sexual touching."  These defendants breached their "duties owed to [p]laintiffs and were grossly negligent when they conducted themselves by the actions described."

The sixth cause of action was for intentional infliction of emotional distress against the Department, Sacramento Family, Simon, and Okungbowa, alleging Simon and Okungbowa intentionally "anally and vaginally penetrated [p]laintiffs without authorization or consent and engaged in sexual touching" while acting as these defendants' agents "under [the Department's] mandatory pre-employment examination requirements," the "conduct involved was extreme, outrageous and unreasonable," and it caused plaintiffs "severe emotional distress."

The seventh cause of action was for concealment against the Department, alleging the Department had a duty of good faith but "intentionally failed to disclose to [p]laintiffs that it knew that only Northern California correctional officer applicants had been subjected to the . . . examinations as a part of the medically unnecessary rectal and vaginal pre-employment examinations and that [the Department] had received complaints of the same related to the pre-employment examinations conducted by" Simon and Okungbowa.  "Had [the Department] disclosed the omitted information, [p]laintiffs and other applicants reasonably would have behaved differently, and would not have undergone the medically unnecessary anal and vaginal examinations with Simon [and] Okungbowa."  (Some capitalization omitted.)

The eighth cause of action was for negligent misrepresentation against all defendants, alleging defendants made representations that plaintiffs "required rectal and/or vaginal examinations in order to secure employment with [the Department]," these "representations were not true as rectal and/or vaginal examinations were not a pre-condition of employment with [the Department]," and plaintiffs relied on these representations.  Plaintiffs also relied on defendants' representations Simon and Okungbowa "were competent medical professionals who would perform safe, routine

4

pre-employment examinations within the appropriate standards of care" even though defendants had notice Simon and Okungbowa were conducting "medically unnecessary and unreasonable rectal and/or vaginal examinations," rendering these representations untrue.

The ninth cause of action was for "aiding and abetting" (capitalization, underscoring, & boldface omitted) against the Department and Sacramento Family, alleging these defendants knew Simon and Okungbowa engaged in battery and other misconduct and gave them "substantial assistance" in performing such misconduct and "did not take action or in any way appropriately respond to the complaints and allegations raised regarding" Simon's and Okungbowa's conduct.

The tenth cause of action was for medical malpractice against Sacramento Family, Simon, and Okungbowa, alleging these defendants "failed to exercise the proper degree of skill, knowledge and care when they provided care and performed exams on [p]laintiffs."

The eleventh cause of action was for ratification against the Department and Sacramento Family, alleging these defendants ratified Simon's and Okungbowa's sexual misconduct and harassment by being aware of the complaints but failing to stop Simon and Okungbowa, continuing to employ them, and directing them "to perform the medically unnecessary and invasive rectal and vaginal examinations."

Finally, the twelfth cause of action was for sexual battery against the Department, Sacramento Family, Simon, and Okungbowa, alleging the Department directed Simon and Okungbowa "to repeatedly act with intent to cause harmful or offensive contact with an intimate part of [p]laintiffs and a sexually offensive and harmful contact resulted," violating Civil Code section 1708.5.

## II

### *Delayed Discovery Allegations*

Plaintiffs' previous complaints alleged they "did reluctantly undergo" the anal penetration and rectal examinations that were represented as a precondition of employment; plaintiffs "were subjected to extreme pain and duress associated with the rectal exams and anal penetration performed on them by defendants"; and female plaintiffs "objected to the vaginal examinations but were told that they were required to undergo them" as a precondition of employment. Further, "[u]pon information and belief, in 2015, [the Department] was put on notice of Simon and Okungbowa [*sic*] actions after receiving complaints from [p]laintiffs concerning the medically unnecessary rectal examinations, anal penetration, vaginal penetration, [and] visual vaginal penetration." (Capitalization omitted.) The trial court sustained defendants' demurrers to these complaints with leave to amend the causes of action alleged in the operative complaint.

The operative complaint omitted the allegations plaintiffs "reluctantly" underwent the exams and "objected" to the exams. The operative complaint also omitted the language the Department received complaints about Simon and Okungbowa from plaintiffs and instead stated: "Upon information and belief, beginning in 2015 [the Department] received reports regarding concerns about [d]efendants [Simon's and Okungbowa's] . . . conduct and 'examination,' yet [the Department] failed to take any action in response to such complaints. [The Department] received complaints *through its supervisors and other managers* of serious sexual misconduct. [The Department] continued to conceal the fact that these exams were not medically necessary, indicated, reasonable or appropriate for employment with [the Department]." (Italics added.)

Plaintiffs also added to the operative complaint: "Defendants concealed the information from [p]laintiffs that the rectal exams and/or vaginal exams that they were undergoing were not a requirement for employment and were not part of the

6

pre-employment exam.  Given this information was concealed from [p]laintiffs, they complied and underwent the exams not knowing they should not have been performed."

III

*Demurrers To The Operative Complaint*

Defendants filed demurrers to the operative complaint and the trial court sustained these demurrers without leave to amend.  The trial court applied the sham pleading doctrine and read the allegations omitted from the prior complaints into the operative complaint.  (See *Larson v. UHS of Rancho Springs, Inc.* (2014) 230 Cal.App.4th 336, 343 [under the sham pleading doctrine, " 'a court is "not bound to accept as true allegations contrary to factual allegations in former pleading in the same case" ' "].)  The trial court then found plaintiffs' complaint could not overcome the statute of limitations through the fraudulent concealment principle or the delayed discovery rule because:  "The allegations read back into the amended consolidated complaint demonstrate [p]laintiffs had knowledge of the wrongful conduct either at the time they underwent the examinations or in 2015."[2]

Plaintiffs appeal.

DISCUSSION

Plaintiffs argue the trial court erred in sustaining the demurrers by triggering the statute of limitations at the incorrect date because:  "The wrongful conduct [that] forms the basis for [p]laintiffs' claims is that [d]efendants lied to them when [d]efendants misrepresented that the subject examinations were required as a condition of employment under [the Department] policy.  Unless and until [p]laintiffs had notice that this representation was false and that [the Department] did not in fact have such a policy, then

---

[2]    The trial court issued individual rulings for each defendant's demurrer, but the analysis was the same for each.

7

[p]laintiffs lacked sufficient notice of the wrongful conduct that forms the basis for their claims." We disagree.

I

*Legal Standards*

This case involves a demurrer sustained on statute of limitations grounds. " ' " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.' " ' " (*Tilbury Constructors, Inc. v. State Comp. Ins. Fund* (2006) 137 Cal.App.4th 466, 471.) "Our review of the legal sufficiency of the complaint is de novo, 'i.e., we exercise our independent judgment about whether the complaint states a cause of action as a matter of law.' " (*Ibid*.)

"For purposes of accrual of the limitations period, inquiry notice is triggered by suspicion. . . . 'Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, [the plaintiff] must decide whether to file suit or sit on her[, his, or their] rights.' " (*E-Fab, Inc. v. Accountants, Inc. Services* (2007) 153 Cal.App.4th 1308, 1319 (*E-Fab*).) " 'Resolution of the statute of limitations issue is normally a question of fact.' [Citation.] More specifically, as to accrual, 'once properly pleaded, belated discovery is a question of fact.' [Citation.] . . . . 'However, whenever reasonable minds can draw only one conclusion from the evidence, the question becomes one of law.' [Citation.] Thus, when an appeal is taken from a judgment of dismissal following the sustention of a demurrer, 'the issue is whether the trial court could determine as a matter of law that failure to discover was due to failure to investigate or to act without diligence.' " (*Id*. at p. 1320.)

Demurrers on statute of limitations grounds may be overcome by pleading the delayed discovery rule or the fraudulent concealment principle. (*Holman v. County of Butte* (2021) 68 Cal.App.5th 189, 197-198; *Bernson v. Browning-Ferris Industries* (1994) 7 Cal.4th 926, 931.) "The discovery rule is applicable 'where it would be manifestly unjust to deprive a plaintiff of a cause of action before [the plaintiff] is aware he[, she, or

8

they] has [or have] been injured.' [Citation.] 'Whether the discovery rule applies at all is initially a matter of pleading.' [Citation.] 'In order to rely on the discovery rule for delayed accrual of a cause of action, "[a] plaintiff whose complaint shows on its face that [the plaintiff's] claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." [Citation.] In assessing the sufficiency of the allegations of delayed discovery, the court places the burden on the plaintiff to "show diligence"; "conclusory allegations will not withstand demurrer." ' " (*Holman*, at pp. 197-198.)

"A close cousin of the discovery rule is the 'well accepted principle . . . of fraudulent concealment.' [Citation.] 'It has long been established that the defendant's fraud in concealing a cause of action against [the defendant] tolls the applicable statute of limitations, but only for that period during which the claim is undiscovered by plaintiff or until such time as plaintiff, by the exercise of reasonable diligence, should have discovered it.' " (*Bernson v. Browning-Ferris Industries*, *supra*, 7 Cal.4th at p. 931.)

## II

### *Plaintiffs' Claims Are Time-barred*

Plaintiffs argue the delayed discovery rule and fraudulent concealment principle apply to toll the statute of limitations until they discovered the Department's pre-employment policy did not require the invasive exams. Plaintiffs assert the allegations omitted from their operative complaint about their knowledge of the medically unnecessary exams at or near the time of the exams are irrelevant because their complaint is based on their deficient knowledge of the Department's policy, not the medically unnecessary exams. Specifically, plaintiffs state their "awareness that the exams were not 'medically' necessary only provided grounds for [p]laintiffs to complain

9

about the [Department] policy they believed existed. It did not afford grounds for them to believe that there was in fact no such policy." We disagree.[3]

Application of the statute of limitations must be analyzed for each cause of action individually, something plaintiffs do not do in their briefs. (See *E-Fab*, *supra*, 153 Cal.App.4th at p. 1322 ["the key issue is whether 'a reasonable investigation at that time would . . . have revealed a factual basis for *that particular cause of action*' "].) Still, we will analyze each cause of action in the operative complaint and conclude they all rely on the medically unnecessary nature of the exams and sexual abuse during the exams as the basis for the wrongdoing, not plaintiffs' deficient knowledge of the Department's pre-employment policy. Thus, the omitted allegations establish plaintiffs discovered the wrongdoing at or near the time of the exams.

The first cause of action for negligence is based on the organizational defendants breaching their duty of care to plaintiffs by "scheduling and requiring *medically unnecessary* and unreasonable rectal and vaginal examinations to occur." (Italics added.) Based on the language of this claim, the wrongdoing is scheduling and requiring the medically unnecessary exams, not whether plaintiffs were misled about the Department's actual policy requirements. Thus, even if plaintiffs later learned the exams were not required by the Department, that delayed knowledge cannot be used to excuse plaintiffs' earlier discovery that the exams lacked medical necessity, the wrongdoing underlying this claim.

The other causes of action similarly do not rely on allegations plaintiffs' deficient knowledge of the Department's policy was the wrongdoing: The second cause of action

---

**3**    We do not discuss the sham pleading doctrine because plaintiffs' argument for why the sham pleading doctrine should not apply is essentially that the omitted allegations were not relevant to tolling. Deciding whether the omitted allegations bar application of the delayed discovery rule and fraudulent concealment principle, rendering the allegations relevant, therefore also resolves the sham pleading doctrine issue.

for negligent supervision and hiring and retention was based on allowing Simon and Okungbowa "access to [p]laintiffs during their pre-employment examinations that resulted in the *sexual assault and abuse* of [p]laintiffs[,] including rectal and vaginal examinations"; the third cause of action for gender violence alleged Simon and Okungbowa made "*unpermitted, harmful, and offensive sexual and/or other physical intrusion, invasion or contact* with the [p]laintiffs"; the fourth cause of action for battery mirrored the allegations of the third cause of action; the fifth cause of action for gross negligence and/or wanton and reckless misconduct alleged a breach of duty "to ensure [plaintiffs'] safety and *freedom from sexual assault* . . . while interacting with [defendants'] employees"; the sixth cause of action for intentional infliction of emotional distress alleged the doctors intentionally "anally and vaginally penetrated [p]laintiffs *without authorization or consent and engaged in sexual touching*"; the ninth cause of action for aiding and abetting alleged certain defendants knew Simon and Okungbowa engaged in battery and gave them "substantial assistance" in performing such misconduct; the tenth cause of action for medical malpractice alleged Simon, Okungbowa, and Sacramento Family "failed to exercise the proper degree of skill, knowledge and care when they provided care and performed exams on [p]laintiffs"; the eleventh cause of action for ratification alleged defendants ratified Simon's and Okungbowa's sexual misconduct by continuing to employ them and directing them "to perform the *medically unnecessary* and invasive rectal and vaginal examinations"; and the twelfth cause of action for sexual battery alleged the Department directed Simon and Okungbowa "to repeatedly act with intent to cause *harmful or offensive contact* with an intimate part of [p]laintiffs."  (Italics added.)  All of these causes of actions assert the wrongdoing was the medically unnecessary nature of the exams and/or the sexual abuse during those exams, not plaintiffs' deficient knowledge of the Department's pre-employment policy.

Even the seventh and eighth causes of action, which do rely on the Department's pre-employment policy to some extent, do not allege harm from the mistaken belief the Department required medically unnecessary exams. The seventh cause of action for concealment alleged the Department intentionally concealed that only Northern California applicants had to take "medically unnecessary" exams for employment and that the Department had previously received complaints about Simon and Okungbowa. Had the Department disclosed this information plaintiffs would have "behaved differently, and would not have undergone the medically unnecessary anal and vaginal examinations with Simon [and] Okungbowa." (Capitalization omitted.) Similarly, the eighth cause of action for negligent misrepresentation alleged the Department required the exams for employment but these "representations were not true as rectal and/or vaginal examinations were not a pre-condition of employment with [the Department]," and plaintiffs allegedly relied on these representations. These two claims alleged the Department's concealment and misrepresentation of its policy made plaintiffs take the medically unnecessary exams with Simon and Okungbowa. But as with the other causes of action, the wrongdoing alleged resulting from harm is the medically unnecessary exams with Simon and Okungbowa. There are no allegations indicating plaintiffs were unaware of the wrongdoing until they discovered the concealment of the Department's policy.

This issue is further clarified in plaintiffs' briefs where they argue that until the time each plaintiff discovered there had been no actual job application requirement for these exams, "each [p]laintiff did not recognize and w[as] not aware that (1) the physical examinations were abusive because they were not necessary to apply for a [Department] job and (2) that the statements the examinations were necessary for their job application[s] were false." This argument fails on the first point because plaintiffs provide no citations to where in their complaint a claim is based on the examinations being abusive *because they were not necessary to apply for a job* with the Department.

12

From our analysis above, the complaint instead is reliant on the physical examinations being abusive *because they were not medically necessary and/or were sexually abusive*. Plaintiffs' asserted interpretation of their complaint on appeal would mean that, had the Department simply made these medically unnecessary and sexually abusive exams a part of their pre-employment policy, there would have been no wrongdoing or harm. We cannot find any language in the complaint supporting this interpretation of plaintiffs' claims.

With this understanding of plaintiffs' complaint, we conclude the claims are all time-barred. Plaintiffs do not contest their claims are time-barred if the delayed discovery rule or fraudulent concealment principle are not applied. That is the case here because the allegations read into the operative complaint establish an awareness of the medically unnecessary nature of the exams at or near the time of the exams, such as plaintiffs expressing reluctance and opposition to the exams generally, and specifically that "in 2015, [the Department] was put on notice of Simon and Okungbowa [*sic*] actions after receiving complaints *from* [*p*]*laintiffs* concerning the *medically unnecessary* rectal examinations, anal penetration, vaginal penetration, [and] visual vaginal penetration." (Some capitalization omitted, italics added.) Given these allegations, plaintiffs had actual knowledge of wrongdoing as a matter of law outside the claims' statutes of limitation, rendering the two tolling doctrines inapplicable. (*E-Fab*, *supra*, 153 Cal.App.4th at p. 1320.) Plaintiffs also do not provide any means to amend their complaint to overcome these deficiencies. We therefore conclude the trial court did not err in sustaining defendants' demurrers.

## DISPOSITION

The judgment is affirmed.  Defendants shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)


                                        /s/\
                                          ROBIE, J.


We concur:


/s/\
HULL, Acting P. J.


/s/\
BOULWARE EURIE, J.

14